## E. L. Hall, Appellee, v. Bird-Bergstrom Motor Car Company, Appellant.

### Gen. No. 7,127.

MASTER AND SERVANT—*when salesman's right to drawing account chargeable against commissions is absolute.* A salesman employed under a contract to receive a commission on all sales and also to receive a specified weekly drawing account to be charged against commissions, but not to exceed eight weeks beyond earned and paid commissions within any one year, is entitled to receive the drawing account for eight weeks where he quit the employment at the end of the ninth week and his commissions earned did not equal the amount of the drawing account.

Appeal by defendant from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding. Heard in this court at the October term, 1922. Affirmed on remittitur. Opinion filed January 24, 1923.

GARRETT, MAYNARD & HULL, for appellant.

FISHER, NORTH, WELSH & LINSCOTT, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, E. L. Hall, began suit before a justice of the peace in Winnebago county against appellant, the Bird-Bergstrom Motor Car Company, and there was a judgment in favor of the appellant. Appellee appealed to the circuit court of Winnebago county where a jury was waived, and on a trial before the court, judgment was rendered against the appellant for $282.27, and this appeal was prosecuted.

The appellee, an automobile salesman, was employed by the appellant to sell automobiles. The contract between them was oral but it is agreed that he was to receive five per cent commission on all sales made by him. He was also to receive a weekly draw-

ing account of $50 to be charged against commissions, but not to exceed eight weeks beyond earned and paid commissions within any one year. Appellee worked under this contract for about nine weeks, during which time he drew $50 per week for three weeks. At the end of nine weeks he quit his employment. The contract of employment on behalf of the appellant was entered into by Mr. Bird, an officer of the corporation. Appellee testified that at the end of the fourth week Bird was away and appellee did not draw his $50. The bookkeeper made out the check but as Bird was not there to sign it, it was not executed. The following week the bookkeeper made out a check for $50 and appellee handed it back to her and told her that he had not drawn the $50 for the week before and he asked her to make out a check for $100, but this check was never made out. He testified that he afterwards took the matter up with Bird, who asked appellee if he needed the money, and appellee told Bird that it was not necessary for him to have it at that time and Bird told him they would fix it the next week. Bird also told appellee he was going to leave the corporation and he did not want to sign any more checks until there was a settlement of the business affairs. It is conceded that the money received by appellee on the drawing account more than paid for all commissions earned while in the employ of the appellant, and he is not claiming any money as commissions earned, but simply the balance which he claims to be due him on the drawing account.

The sole question for determination is whether or not appellee was entitled to draw $50 per week for eight weeks regardless of the commissions earned during that time. The contention of the appellant is that the drawing account was given to appellee to tide him over until he earned some commissions; that the drawing account was to be charged to him and against his commission account; that he knew he had to pay back

the money drawn in advance from whatever commissions he earned; that the drawing account was an advancement which he might resort to in emergency for expense money.

It is the appellee's contention that he was entitled to a drawing account of $50 a week for eight weeks to be charged against commissions; that when he had earned commissions to that amount the commission advanced was to be credited, but that he was entitled to the $50 per week whether he had earned commissions to that amount or not; and if he left his employment voluntarily, without fault, and, at the time he left, his commissions did not amount to the drawing account, he was still entitled to the drawing account accruing up to that time.

We have carefully read the cases cited by each party on this point, and we are of the opinion that the position of appellee is correct, and that appellant is wrong in its contention. In *Gannon v. Tyree*, 148 Ill. App. 99, the terms of the contract were as follows: "I guarantee to loan or advance to each of you the sum of $250 per month for one year, the said loans to be charged against you and to be deducted from commissions that may accrue under this contract." In construing this portion of the contract the court on page 101 said: "The question here presented for solution is somewhat novel, and aside from the authorities cited to us by plaintiff we have been unable to find any which are of an analogous character. However, it seems reasonable to us that the contract bound defendant to loan plaintiff $250 per month during the year, such loans, to a limited extent, to be charged against the plaintiff. The only liability, however, resting on the plaintiff to repay was from commissions earned, and none worthy of mention was earned. To such commissions defendant must look for repayment. Notwithstanding no commissions were being earned, this fact did not absolve defendant from

his contract obligation to advance $250 each month for a year. In faith of such understanding upon the part of defendant, plaintiff became a party to the contract. Defendant cannot, in reason or fairness, escape such self-imposed liability because the result has proved to be unprofitable to him." In *Felsenthal Brothers & Co. v. Gradwohl*, 217 Ill. App. 170, the "defendant was to receive forty per cent of the profits of goods sold by him, $45 per week traveling expenses while on the road, and a drawing account of $250 per month. The traveling expenses and the drawing account were to be charged against defendant and deducted from his forty per cent of the profits. The employment was to run for twelve months unless other arrangements were made." The employer was attempting to recover from the employee what the employer termed was an overdraft, being the amount of the drawing account and expenses which had been paid to the employee less profits earned by the employee, which amount was $2,000 less than the drawing account and the traveling expenses already paid to the employee, and the court on page 172 said: "The question resolves itself into an interpretation of the contract entered into by the parties. It is expressly provided that the expense account and the drawing account 'is to be charged against me, and to be deducted from profits that I make on the merchandise that I sell for them.' * * * It clearly means that there was no intention of the parties that the money advanced the defendant from time to time should be repaid to plaintiff in case the defendant's commissions did not equal the advances. *Auerbach v. Ramer*, 80 N. Y. Misc. 645, 141 N. Y. Supp. 848; *Gannon v. Tyree*, 148 Ill. App. 99; *Schlesinger v. Burland*, 42 N. Y. Misc. 206."

In *Schlesinger v. Burland*, 42 N. Y. Misc. 206, the employer agreed to advance traveling expenses and $250 each month for one year, both to be charged to and deducted from the commissions at the end of the

period of employment. The actions in that case was brought for two monthly advancements paid. The employer set up a counterclaim, a small sum advanced in excess of commissions. This counterclaim was eliminated by demurrer. The court in construing that part of the contract providing for reimbursement said: "In effect, the presence of the last-mentioned provision points to the mutual intention of the parties that the commissions should constitute a fund which alone should be resorted to for reimbursement of the advances. We are to give reasonable meaning, if possible, to every part of the agreement, rather than to hold a particular clause thereof wholly without import."

Appellant cites as controlling of its position the case of *Strauss v. Cohen Bros. Co.*, 169 Ill. App. 337. We do not think the facts in that case are controlling here. In that case the court held that the plaintiff could not recover on his claim against the defendant for unpaid salary because the terms of the contract clearly set forth the intention of the parties that the $100 per month was an advancement and was not a drawing account. The contract in that case contained the following: "And continuing while same shall be in force between the parties, the sum of $100 with the understanding that the sum of such advancements for any year shall not exceed (see below) per cent of the sales of said second party; and if at the close of the year's shipments, the amount shown by computing ———per cent on the sales of said second party, shall show an excess over and above the sum of money advanced by first party for traveling expenses, together with the drawing account, then any such excess sum shall be paid to second party by the first party." It was held that that contract was a commission contract and under its terms the salesman was to be advanced his commission only and therefore it was not a drawing account and not controlling in this case.

Under the law and the evidence we think this was a drawing account and appellee was entitled to draw $50 per week for eight weeks whether he earned that amount of commission or not. It was not his fault that he did not draw the full amount for each week. He did draw the $50 per week for three weeks, and apparently, by agreement with Bird, the further drawing was postponed until after the business was dissolved and its affairs settled. For this reason, we think, the appellee was entitled to the balance of the drawing account due him, whatever that amount might be.

There is one respect in which this judgment cannot be affirmed. Appellee worked eight weeks and drew $150, leaving a balance of $250 due. From this should be deducted $17.28, which it is agreed appellee owed appellant, leaving $232.72 balance due. The judgment is for $282.72, or $50 more than is due from the appellant to the appellee.

The judgment will be affirmed upon appellee entering a remittitur in this court of $50.

*Judgment affirmed upon remittitur.*