FRANK G. CARTER, Appellant, *v.* JOHN R. BRADLEE and Others, Copartners Doing Business under the Firm Name and Style of HENRY W. PEABODY & Co., Respondents.

First Department, June 14, 1935.

*S. S. Goldsmith* of counsel [*Charles Rabbins* with him on the brief; *S. S. Goldsmith*, attorney], for the appellant.

*J. Hampden Dougherty, Jr.*, of counsel [*M. Briney, Jr.*, with him on the brief; *Lowe & Dougherty*, attorneys], for the respondents.

O'MALLEY, J. The propriety of the dismissal of the complaint and the direction of judgment in favor of the defendants on their counterclaim depends principally, if not entirely, upon the construction and interpretation to be given to a written contract of employment between the parties. The dismissal and direction were at the close of plaintiff's case, both sides having rested.

The plaintiff originally entered the employ of the defendants in 1901. He was discharged in 1931. The contract of March 4, 1926, the basis of this action, employed the plaintiff as manager of one of the subdivisions of the import department of the defendants for a term of two years commencing November 1, 1925, at an annual salary of $6,000, together with a percentage of the net profits of the department. At the expiration of the term set forth in this written agreement the plaintiff continued in the employ of the defendants until his discharge on April 30, 1931. Under these circumstances we are of opinion that plaintiff's term of employment was at least good for annual renewals upon the same terms and that ordinarily he could not be discharged until October 31, 1931. (*Adams* v. *Fitzpatrick,* 125 N. Y. 124; *Mason* v. *New York Produce Exchange,* 127 App. Div. 282; affd., 196 N. Y. 548; *Mendelson* v. *Bronner,* 124 App. Div. 396; *Baker* v. *Appleton & Co.,* 107 id. 358; affd., 187 N. Y. 548.)

This contract, however, contained the following provision: " This Agreement is made for two years from November 1st, 1925, but it is understood and agreed that we retain the right to terminate the Agreement and to discharge you at any time, should we feel called upon to do so for any reason."

It is contended by the defendants that the trial justice properly decided that under the foregoing provision the plaintiff could be discharged at any time. We adopt a different view. Such a construction would make the contract merely one at the defendants' will, though by its terms it was for two years. A construction will not be given to a contract, if possible, that would place one of the parties at the mercy of the other. (*Simon* v. *Etgen,* 213 N. Y. 589.) Under the clause in question we are of opinion that any discharge before the expiration of a year should have some " reasonable " ground and that the reason must be attended with good faith. (*Industrial & General Trust, Ltd.,* v. *Tod,* 180 N. Y. 215; *Schoellkopf* v. *Coatsworth,* 166 id. 77; *Parsil* v. *Emery,* 242 App. Div. 653; *Vogel* v. *Pathe Exchange, Inc.,* 234 id. 313; *Sullivan* v. *Frazier,* 40 id. 288.)

The plaintiff's discharge occurred under the following circumstances: The defendants had paid him from November, 1927, until January, 1931, at the rate mentioned in the contract, $500

per month.  Commencing February 1, 1931, however, because of
the depression, the plaintiff agreed to accept a monthly compensa-
tion of $250, and accepted this reduced salary until his discharge.
In April, 1931, the defendants, stating that they would like to
reduce their expenses, endeavored to induce the plaintiff to accept
a compensation of $25 per week.  Upon his refusal, he was dis-
charged at the time stated.

We are of opinion that in these circumstances there was no valid
reason for the defendants' discharge of plaintiff for his refusal to
accept such a drastic reduction in his stipulated remuneration.  It
was error, therefore, for the trial justice to dismiss the complaint.

There is next to be considered the direction of a verdict in defend-
ants' favor on their counterclaim.  As originally pleaded, this was
for the sum of $43,702.21, embracing three items: (1) Losses in the
department managed by the plaintiff in the sum of $16,448.86 for
the period ended October 31, 1925; (2) interest thereon to the same
date, in the sum of $2,253.35; and (3) amounts drawn by the plain-
tiff against profits not earned, in the sum of $25,000.  As was their
right, if otherwise entitled to recover, the defendants asked for and
received judgment on the first item.  They received interest on
this amount for the period subsequent to October 31, 1925, but now
admit that interest from that date to November 1, 1927, was
improperly added since the last contract of employment in writing
between the parties had the provision: " Interest not to be charged
on present indebtedness."

They maintain, however, that under the arrangement between
the parties they are entitled to recover affirmatively for the losses
to such date.

The first contract between the parties, renewed by writings at
the foot thereof from time to time, provided that the plaintiff
was to receive twenty per cent of the net profits and/or losses
on sales made by him, as a part of which he was authorized to draw
a guaranteed salary of $2,000 per annum.  Should twenty per cent
of the net profits exceed the $2,000 drawing account, the excess
was to be credited to plaintiff's personal account and paid to him,
with the proviso, however, that should any of the profits accruing to
him exceed $4,000, he was to allow such excess to remain with the
defendants as a credit balance but applicable against possible future
losses on his sales.

The second contract gave plaintiff a drawing account of $5,000
per annum to form part of a twenty per cent commission to be
credited on the net profits.  It was also provided that should his
total commission as defined in the contract exceed in any one year
the $5,000 drawing account, such excess was to be credited to

his personal account, and if paid to him, any amount over $10,000 was to remain with defendants as his credit balance, also applicable against possible future losses.

Under the last contract, the plaintiff, as already stated, was to receive a " salary " of $6,000 per annum. Specifically this annual sum was not, as expressly provided in the first two contracts, to be part of a drawing account. In addition to this annual remuneration, it was provided that should the net profits exceed $20,000 per year, plaintiff was to receive ten per cent commission up to $15,000 in excess of the $20,000 to be credited to his account and subject to his order; on net profits in excess of a total of $35,000, he was to be considered as earning twenty per cent thereof, with the understanding and agreement, however, that the said twenty per cent or any part thereof was to be applied against his indebtedness to the defendants, with the further understanding that when such indebtedness was paid plaintiff's commission on any further excess profit was to return to ten per cent.

Defendants' counterclaim is on the theory of account stated, predicated upon the fact that defendants furnished plaintiff with statements showing that, upon the basis of twenty per cent participation by the plaintiff in the losses of his department, there was due the sum of $16,448.86.

The last statement furnished plaintiff showed, however, an alleged debit balance far in excess of the $16,448.86 awarded defendants on the trial and was in the sum of $43,702.21. We need not, however, go into the figures of the accounts as rendered plaintiff. We are of opinion that under all the agreements in evidence the losses in the department, while chargeable to the plaintiff, nowhere involved an obligation on his part to be responsible therefor save with respect to a setoff against future profits. In all of these agreements it was provided that this should be done, and indeed there was specific provisions for these defendants to withhold from plaintiff's share of the profits a certain portion thereof to meet such contingency. We are of opinion that under such circumstances the arrangement was similar to that between an ordinary salesman and employer where, if nothing to the contrary is specified, advances to the salesman are absolute and when his commissions as earned do not entitle him to the full sum advanced there may be no recovery by the employer of the difference. (*Northwestern Mutual Life Ins. Co.* v. *Mooney*, 108 N. Y. 118; *Lobsitz* v. *Leffler, Thiele & Co.*, 140 App. Div. 14; affd., 206 N. Y. 703; *Educational Films Corp.* v. *International Film Service Co., Inc.*, 129 Misc. 370; affd., 222 App. Div. 668.)

It was error, therefore, for the trial court to direct a verdict sustaining defendants' counterclaim.

It follows, therefore, that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., MERRELL, McAVOY and UNTERMYER, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.